UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEPHEN FARRUGGIO,

        Plaintiff,

    -v-                  6:22-CV-429

KRAFT HEINZ FOOD COMPANY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| RUBENSTEIN, BERLINER<br>  &amp; SHINROD, LLC<br>Attorneys for Plaintiff<br>70 South Orange Avenue, Suite 205<br>Livingston, NJ 07039 | DAWN S. DeWEIL, ESQ. |
| GOLDBERG SEGALLA, LLP<br>Attorneys for Defendant<br>8 Southwoods Boulevard, Suite 300<br>Albany, NY 12211-2526 | JONATHAN M.<br>   BERNSTEIN, ESQ. |
| GOLDBERG SEGALLA, LLP<br>Attorneys for Defendant<br>5786 Widewaters Parkway<br>Syracuse, NY 13214 | ERIN TYREMAN, ESQ. |

DAVID N. HURD
United States District Judge

## DECISION & ORDER

## I. INTRODUCTION[1]

On May 3, 2022, plaintiff Stephen Farruggio ("Farruggio" or "plaintiff") filed this state-law premises liability action against defendant Kraft Heinz Foods Company ("Kraft" or "defendant").[2]  Dkt. No. 1.  Plaintiff's amended complaint alleges that defendant, which operates a cheese manufacturing plant in Lowville, New York, allowed some cleaning liquid to pool on the floor of the facility.  *See* Dkt. No. 13.  Plaintiff, who was on the premises to service some of defendant's equipment, fell on the wet, slippery floor and sustained personal injuries.  *Id*.

On April 8, 2024, following the completion of discovery, Kraft moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Farruggio's negligence claim.  Dkt. No. 51.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

---

[1] This case was initially assigned to Senior U.S. District Judge Gary L. Sharpe.  The matter was reassigned to this Court on February 21, 2024.  Dkt. No. 50.

[2] Farruggio's operative complaint names various Doe defendants.  Dkt. No. 13.  Plaintiff failed to identify or serve these individuals or entities before the close of discovery.  Although that is enough to justify their dismissal, *see* FED. R. CIV. P. 4(m), plaintiff also consents to their dismissal in his opposition briefing, Dkt. No. 53 at 11.  Accordingly, the Clerk of the Court will be directed to terminate those defendants from this action.

## II. **BACKGROUND**[3]

On the date of the incident at issue, Farruggio was employed by Bell-Mark as a salesperson. Defendant's Statement of Material Facts ("Def's Facts"), Dkt. No. 51-9 ¶ 2; Farruggio Aff., Dkt. No. 53-7 ¶ 1. Bell-Mark is a business specializing in manufacturing printing and coding machines. Def's Facts ¶ 2. In his role as a salesperson, plaintiff was responsible for selling coding machines to Kraft. Farruggio Aff. ¶ 1. Kraft uses these coding machines in its cheese production line at its manufacturing facility in Lowville, New York (the "facility"). Def's Facts ¶¶ 1,3.

On May 3, 2019, Farruggio travelled to the facility to assist with installing a new coding machine in Kraft's Multivac room, where Kraft produces its string cheese. Def's Facts ¶¶ 3–5, 11. To reach the Multivac room, a person must enter the facility's dry-packaging area. *Id.* ¶ 12. A small vestibule, used to ensure sanitation before entry to the Multivac room, separates the dry-packaging area and Multivac room. *Id.* ¶¶ 12–14. The vestibule contains a barrel that pumps Whisper V, a liquid cleaning agent, onto the floor. *Id.* ¶¶ 14–15. Whisper V is used to coat the bottom and sides of shoes to remove any microbes or dirt. *Id.* ¶ 14. As a result, the vestibule's floor is "always wet by

---

[3] The following facts are drawn from Kraft's statement of material facts to the extent that those facts are well-supported by pinpoint citations to the record consistent with Local Rule 56.1(a). Facts that Farruggio has failed to properly dispute have been deemed admitted pursuant to Local Rule 56.1(b).

design" with Whisper V, and also with soap and water tracked in from a cleaning process in the Multivac room. *Id.* ¶¶ 15–16, 20.

Frequently, liquid from the vestibule would travel into the dry-packaging area. Def's Facts ¶¶ 16–17. According to Farruggio, the liquid on the dry-packaging area floor contained Whisper V and appeared clear like water but was more slippery than water. Farruggio Aff. ¶¶ 11–12, 17. Plaintiff asserts that the dry-packaging area floor, unlike the other wet areas in the facility, was not coated with slip-resistant material, and there were no warnings that the floor was not slip resistant or that Whisper V could make the floor more slippery than water. *Id.* ¶¶ 15–17.

Farruggio's equipment was set up in the dry-packaging area while he was assisting with the machine installation. Def's Facts ¶ 31. Plaintiff went in and out of the vestibule at least six times and acknowledged that the facility's floors were wet. *Id.* ¶¶ 22, 32–33. Plaintiff asserts that Kraft required him, as an outside contractor, to wear rubber booties over his shoes to protect against food contamination.[4] Farruggio Aff. ¶ 7. According to plaintiff, these booties "were not slip resistant and seemed to make the slip resistant floor slippery." *Id.*

---

[4] Farruggio asserts that Kraft employees "wore boots that protected their feet and enhanced slip resistance." Farruggio Aff. ¶ 7.

- 4 -

A few hours into installation of the machine, Farruggio reached for a tool while standing in a puddle in the dry-packaging area. Def's Facts ¶¶ 34–35. As he was reaching for the tool, plaintiff fell, landing on his back and head. *Id.* ¶ 36. After he fell, plaintiff "sat for a little while," but then completed his work for the day. Farruggio Aff. ¶¶ 19–20. Plaintiff returned to the facility the following two days to complete the installation. *Id.* ¶ 20. Afterwards, plaintiff travelled back to his house and immediately saw a family physician who sent him to the hospital "for a head Ct scan [because he] was experiencing dizziness following the fall in addition to head, neck and back pain." *Id.* ¶ 21. Plaintiff "was diagnosed with a concussion," and "had several surgeries on [his] back and neck." *Id.*

## III. **LEGAL STANDARD**

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts

in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted). Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV.  DISCUSSION

Kraft argues that it is entitled to summary judgment on Farruggio's claim because there is no evidence that it acted negligently or breached any duty owed to plaintiff. Def.'s Mem., Dkt. No. 51-8 at 7–13.[5] Specifically, defendant argues that there is no basis for liability because the puddle of liquid on the floor of the dry-packaging room was (1) open and obvious; and (2) not inherently dangerous. *Id.*

Under New York law, a plaintiff seeking to prove a defendant's negligence must show "'(1) the existence of a duty on [the] defendant's part as to [the] plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (quoting *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (1981)).

This is a slip-and-fall premises liability case, which implicates two distinct duties: a property owner's "'duty to warn of [a] hazard,'" and its general "'duty

---

[5] Pagination corresponds to CM/ECF header.

to maintain [its] premises in a reasonably safe condition.'" *Borley*, 22 F.4th at 82 (quoting *Aberger v. Camp Loyaltown, Inc.*, 142 N.Y.S.2d 528, 532 (1st Dep't 2021)).  "While the former emerges from the latter, the two duties are 'analytically distinct,' such that liability may be found for failure to maintain reasonably safe premises, 'even where the obviousness of the risk negates any duty to warn.'"[6] *Perez v. Dolgen Corp. of N.Y. Inc.*, --F. Supp. 3d--, 2024 WL 871288, at *5 (S.D.N.Y. Feb. 29, 2024) (quoting *Cohen v. Shopwell, Inc.*, 765 N.Y.S.2d 40, 42 (1st Dep't 2003)).

Notably, a landowner does not have a duty to protect or warn against an open and obvious condition that is not inherently dangerous as a matter of law.  *Perez*, 2024 WL 871288, at *5 (citing *Varon v. N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (2d Dep't 2014)).  This is so because the condition at issue "'cannot fairly be attributed to any negligent maintenance of the property' on the landowner's part."  *Chaney*, 115 F. Supp. 3d at 386 (quoting *Varon*, 998 N.Y.S.2d at 434).  Thus, to obtain summary judgment as to alleged breaches of the duties to warn and maintain reasonably safe premises, a defendant must show that the condition was open and obvious and, as a matter of law,

---

[6] Where a landowner fails to establish that a condition was not inherently dangerous, "summary judgment is to be denied, and the case is to proceed to trial, even if the condition is found open and obvious, because 'the open and obvious nature of the condition is relevant [only] to the issue of the plaintiff's comparative negligence.'" *Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 387 (S.D.N.Y. 2015) (quoting *Cupo v. Karfunkel*, 767 N.Y.S.2d 40, 43 (2d Dep't 2003)).

not inherently dangerous. *Crosby v. Southport, LLC*, 94 N.Y.S.3d 109, 113 (2d Dep't 2019) (citation omitted).

### A. **Open and Obvious**

Kraft argues that the puddle on the dry-packaging area floor was an open and obvious condition. Def.'s Mem. at 11–12. In support of this argument, defendant maintains that the puddle was "four to five feet in diameter and a half[-]inch deep," and Farruggio observed and walked through it earlier in the day before he fell. *Id.*

"Under New York law, a condition is open and obvious when it is 'readily observable by the reasonable use of one's senses.'" *Perez*, 2024 WL 871288, at *6 (quoting *Benjamin v. Trade Fair Supermarket, Inc.*, 989 N.Y.S.2d 872, 873 (2d Dep't 2014)). The inquiry into whether a condition is open and obvious "cannot be divorced from the surrounding circumstances." *Mazzarelli v. 54 Plus Realty Corp.*, 864 N.Y.S.2d 554, 555 (2d Dep't 2008). For instance, "an ordinarily apparent condition 'may be rendered a trap for the unwary where the condition is obscured by crowds or the plaintiff's attention is otherwise distracted.'" *Smith v. Target Corp.*, 2023 WL 5959545, at *3 (N.D.N.Y. Sept. 13, 2023) (quoting *Mauriello v. Port Auth. of N.Y. & N.J.*, 779 N.Y.S.2d 199, 200 (1st Dep't 2004)). Importantly, "the 'question of whether a condition is open and obvious is generally a jury question, and a court should only determine that a risk was open and obvious as a matter of law when the facts

compel such a conclusion.'" *Borley*, 22 F.4th at 81 (quoting *Westbrook v. WR Activities-Cabrera Mkts.*, 773 N.Y.S.2d 38, 41 (1st Dep't 2004)).

Upon review, Kraft has not shown that the puddle on the dry-packaging area floor was open and obvious as a matter of law. Viewing the facts in the light most favorable to Farruggio, a reasonable jury could find that the area contained a concealed hazard that was not readily observable. Indeed, the factual record reflects that there is often a collection of water and Whisper V on the floor. Def's Facts ¶¶ 14–17. Moreover, plaintiff has set forth evidence that: the puddle had the appearance of water, but was more slippery because it contained Whisper V; and the area lacked a warning that the floor lacked slip-resistant coating or contained Whisper V. Farruggio Aff. ¶¶ 12, 16–17; Ex. C to DeWeil Aff., Dkt. No. 53-5 at 8. As a result, the record does not compel a finding that the full extent of the hazard posed by the puddle was open and obvious.[7][8] Accordingly, a triable issue of fact exists as to whether

---

[7] Further, a reasonable juror could infer that it was foreseeable that Farruggio, as an outside contractor, may have been distracted with his work and not able to reasonably appreciate the extent of the puddle's hazard. Especially so given that other areas contained slip-resistant flooring, outside contractors were provided foot coverings that were reported to make the floors more slippery, and plaintiff observed Kraft employees traverse the facility using slip-resistant footwear. Farruggio Aff. ¶¶ 7, 15, 17; Ex. C to DeWeil Aff. at 14.

[8] The fact that Farruggio testified that he walked through and saw puddles earlier in the day, Def.'s Facts ¶ 22, does not change this conclusion. Whether a condition is open and obvious is determined from an objective, rather than a subjective, standard, *see Perez*, 2024 WL 871288, at *10, and a "[p]laintiff's awareness of a dangerous condition does not negate a duty to warn of the hazard, but only goes to the issue of comparative negligence," *Farrugia v. 1440 Broadway Assoc.*, 82 N.Y.S.3d 1, 2 (1st Dep't 2018) (citation omitted).

the puddle was an open and obvious condition, and thus, summary judgment on this issue must be denied.

## B. **Inherently Dangerous**

Kraft also argues that the condition of the floor in the dry-packaging area was not inherently dangerous as a matter of law. Def.'s Mem. at 7–11. In support of this argument, defendant asserts that the wet floor was a result of its cleaning process, and not due to any negligence on its part.[9] *Id.*

A condition is inherently dangerous "when 'it requires special precautions at all times to avoid injury.'" *Smith*, 2023 WL 5959545, at *3 (quoting *Joshi v. Walmart, Inc.*, 2016 WL 11472115, at *5 (E.D.N.Y. Aug. 16, 2016)). The determination of whether a condition is inherently dangerous "depends on the totality of the specific facts of each case." *Russo v. Home Goods, Inc.*, 990 N.Y.S.2d 95, 97 (2d Dep't 2014). Thus, the question of whether a condition is inherently dangerous is "usually one for the jury." *Borley*, 22 F.4th at 81 (citing *Trincere v. Cnty. of Suffolk*, 688 N.E.2d 489, 490 (1997)). However, a court may find that a landowner has established an entitlement to judgment as a matter of law where the evidence establishes that "the condition was 'not

---

[9] Kraft also argues, for the first time in its reply memorandum, that it lacked "actual or constructive notice of any dangerous condition." Def.'s Reply, Dkt. No. 54 at 3. This argument need not be considered because parties may not introduce arguments for the first time in reply. *Krause v. Kelahan*, 575 F. Supp. 3d 302, 307 (N.D.N.Y. 2021).

inherently dangerous.'" *Chaney*, 115 F. Supp. 3d at 386 (quoting *Varon*, 998 N.Y.S.2d at 434).

Kraft has also failed to demonstrate that the puddle on the dry-packaging area floor was not inherently dangerous. Drawing all reasonable inferences in favor of Farruggio, a reasonable jury could find that the floor's condition was inherently dangerous. The factual record shows that water and Whisper V frequently collect on the floor. Def's Facts ¶¶ 14–17. Additionally, plaintiff has adduced evidence that: the puddle appeared to consist of only water, but also contained Whisper V, which can make the floor more slippery; the floor did not have slip-resistant coating, unlike other areas in the facility; and due to fluid on the floor, at least one other person slipped in the area. Farruggio Aff. ¶¶ 12, 15–17; Ex. C to DeWeil Aff. at 14. Consequently, the record does not establish that the puddle was not inherently dangerous as a matter of law.[10] [11] Therefore, a triable issue of fact remains as to whether the puddle

---

[10] Kraft's reliance on New York case law for the proposition that "'[w]ashing and waxing a floor is not in and of itself inherently dangerous, though in both operations parts of the floor during the actual process are necessarily made temporarily wet and slippery,'" Def.'s Mem. at 8, is misplaced. These cases do not establish that washing a floor can never create an inherently dangerous condition that supports a negligence claim. This is because the Court has a duty to consider "the totality of the specific facts of each case[.]" *Russo*, 990 N.Y.S.2d at 97 (collecting cases)

[11] Kraft argues that the floor's wet condition "was the result of a daily cleaning and sanitization process required for compliance with . . . state and federal food safety regulations." Def.'s Mem. at 7. However, defendant has failed to reference any specific regulations or demonstrate that the means it used to clean and sanitize the facility were necessary for compliance. Thus, this argument does not establish that the condition was not inherently dangerous.

was an inherently dangerous condition, and as such, summary judgment on this issue must be denied.  Plaintiff's negligence claim shall remain for trial.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. The Doe defendants are DISMISSED without prejudice;

2. The Clerk of the Court is directed to TERMINATE the Doe defendants from the docket in this action; and

3. Defendant's motion for summary judgment (Dkt. No. 51) is DENIED.

IT IS SO ORDERED.

Dated: August 21, 2024
       Utica, New York.

David N. Hurd
U.S. District Judge